UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILLIP A . BADALAMENT,

                Plaintiff,                    No. 05-CV-74932-DT

vs.                                          Hon. Gerald E. Rosen

UNITED OF OMAHA LIFE INSURANCE
COMPANY, a life and health insurer,
KEY AUTOMOTIVE GROUP, designated
Plan Administrator, and KEY SAFETY
SYSTEMS, INC., a Delaware corporation,

                Defendants.

_____/

OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT/DECLARATORY JUDGMENT
AND REMANDING CASE TO PLAN ADMINISTRATOR
FOR EXHAUSTION OF ADMINISTRATIVE REMEDIES

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    March 30, 2007         

PRESENT:  Honorable Gerald E. Rosen
                United States District Judge

I.  INTRODUCTION

This ERISA denial of benefits action is presently before the Court on Plaintiff

Phillip Badalament's motion for partial summary judgment/declaratory judgment and

Defendant United of Omaha's cross-motion to dismiss Plaintiff's Complaint, without

prejudice or, in the alternative, to stay further proceedings to allow exhaustion of

administrative remedies.  Having reviewed and considered the parties' briefs and

supporting evidence, the Court has determined that oral argument is not necessary.

Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will

be decided on the briefs. This Opinion and Order sets forth the Court's ruling.

## II.  FACTUAL BACKGROUND

This ERISA action concerns a claim for benefits under two Mutual of Omaha life

insurance policies insuring the life of Paul Badalament who died on September 8, 2005.

Prior to his death, Mr. Badalament was employed by Defendant Key Safety Systems, Inc.

("Key"), an affiliate of Defendant Key Automotive Group.

During the course of his employment, Paul Badalament was a participant in an

employee benefit plan (the "Plan") sponsored by his employer which offered accidental

death, dismemberment and life insurance coverage to plan participants.  Pursuant to the

Plan documents, Key Automotive Group was designated as the Plan Administrator which,

in turn, delegated to Defendant United of Omaha Life Insurance Company the

discretionary and final authority to construe and interpret the Plan provisions and to

decide all questions of eligibility and the amount and payment of any benefits.  Mr.

Badalament elected to receive life insurance coverage under two Mutual of Omaha group

life insurance policies in the face amounts of $139,000 and $209,000, and designated his

brother, Plaintiff Phillip Badalament, as beneficiary.

On March 21, 2005, Paul Badalament and Key entered into a Severance

Agreement pursuant to which Mr. Badalament's employment relationship with Key was

terminated.[1] According to Defendants, Mr. Badalament was offered an enhanced

severance program, which allowed for continuation of salary and benefits for 20 weeks

after his termination.[2] However, according to Defendants, the "Settlement Agreement,

Waiver and General Release" executed by the parties on April 15, 2005,[3] provided only

that salary and medical benefits would be continued. [*See* Defendant's Ex. 2, attachment

1 to Conigliaro letter.]  Life insurance coverage was <u>not</u> continued past the end of the

month of termination, March 31, 2005.  *See id.*[4] Although the Plan provided that "[i]f

your employment or membership in a class ends. . . you may apply for an individual life

insurance conversion policy. . . ," [*see* Plaintiff's Ex. 2, p. 7], Mr. Badalament did not

apply for such any such conversion.

---

[1] Neither party has provided the Court with a copy of this Severance Agreement.

[2] Key states that at the time of his termination, the company's standard severance program allowed for the continuation of salary and benefits for 10 weeks after the date of termination but Mr. Badalament's severance package provided for 20 additional weeks of salary and benefits.  It appears that Plaintiff treats the date on which the 20-week period expired, August 16, 2005, as the Insured's "last date of employment."  *See* Plaintiff's Complaint, ¶ 21.  (Defendants deny the allegations in this paragraph.  *See* Defendants' Answer to Complaint, ¶ 21.)

[3] Plaintiff makes no mention of the "Settlement Agreement, Waiver and General Release."  However, as with the Severance Agreement, the Court has not been provided a copy of this Agreement.

[4] According to Key, life insurance is never intended under its severance contracts because the former employee cannot meet the eligibility requirements for coverage. [*See* Defendant's Ex. 2, attachment 1.] As provided in the Plan documents, an employee is no longer eligible for life insurance coverage as of the earliest of (1) the day on which employment ends; (2) the day on which the employee is not actively employed; or (3) the day on which he does not satisfy any other eligibility condition described in the policy. [*See* Plaintiff's Ex. 2.]

Although continuation of life insurance coverage was not intended under the signed severance documents, Key mistakenly continued to deduct life insurance premiums from Mr. Badalament's salary checks during the 20-week post-termination severance period. [*See* Defendant's Ex. 2, attachment 1.]  Key did not discover this error until the health coverage deductions ended with the expiration of the 20-week period in August 2005.  *Id.*[5]  There is no indication that Key notified Paul Badalament or United of this error.

As noted, Paul Badalament died on September 8, 2005.  Shortly thereafter, on or about September 13, 2005, Plaintiff Phillip Badalament contacted Key Automotive Group to file a claim, as beneficiary, for his brother's $348,000 life insurance benefits.[6]  A benefits manager at Key Automotive Group apparently took Plaintiff's information over the phone and, with that information, filled out a Claim Form for him.

The information that the benefits manager filled in on the Claim Form included the following:

Date employment began:  *06/01/1995*

Date of last active work:  **08/16/2005**

Premium for the above deceased has been paid through **08/31/2005 (*death occurred***

_____

[5]   Key states that it prepared a check on October 4, 2005 for $219.50 to refund the mistakenly deducted premiums but did not send it to Plaintiff "due to the legal involvement."  *See* Defendant's Ex. 2, attachment 1.

[6]   The Plan Documents require that to initiate the claim process, a claim form is to be requested from either the Plan Administrator (Key Automotive Group) or from United of Omaha. [*See* Plaintiff's Ex. 2 and 4.]

*during 31 day conversion period*)

[*See* Plaintiff's Ex. 3. (Emphasis added).]

The Benefit Manager then sent the form she filled out to Plaintiff and asked him to sign it and return it to her.  *See id.*  Plaintiff did as he was requested and, as directed, returned the completed and signed Claim Form, together with his brother's Death Certificate and a signed authorization for the release of the Insured's medical records, on September 16, 2005.

Normally, Key Automotive Group would immediately submit a completed Claim Form to United of Omaha for processing.  However, in this case, a decision was made not to submit the Claim Form because Key discovered that the date indicated on the form as the "date of last active work," 08/16/05, was incorrect -- it should have been 03/18/05, with a coverage date ending 3/31/05.  *See* Defendant's Ex. 2, attachment 1.

Plaintiff claims that in late September or early October 2005, he was notified by phone that his Claim "was being denied" because Key had made a "mistake," although he states that he was given no further explanation.  *See* Complaint, ¶ 32.  Though Defendants admit that their representatives had oral communications with Plaintiff during September and October 2005, they deny having ever informed Plaintiff that his Claim was "denied." [*See* Defendants' Answer, ¶ 32.]

In any event, on October 20, 2005, Plaintiff filed a putative "appeal" of the alleged oral denial of his Claim and submitted to Defendants therewith documents he claimed

5

supported this appeal.[7]  When more than 45-days thereafter elapsed without a decision on

his "appeal,"[8] on December 30, 2005, Plaintiff filed the instant action claiming that

_____

[7]  None of these putative appeal documents have been provided to the Court.

[8]  The Plan Documents provide, in pertinent part, as follows:

**<u>Claim Review Procedures</u>**

Once we receive information necessary to evaluate the claim, we will make
a decision within the time periods set forth below. . . .

**<u>Claim Review Decisions</u>**

(a) Initial review: We will notify the person submitting the claim of our
claim decision within 45 days after our receipt of the claim, unless
additional information is requested as set forth below;

(b) Extension period: 30 days; and

(c) Maximum number of extensions: two.

. . . We will have a total of 105 days (which includes an additional 30-day
extension, if necessary, due to circumstances beyond our control) to process
the claim. . . .

* * *

**<u>Opportunity to Request an Appeal</u>**

The person submitting the claim will:

(a) have 180 days from receipt of notification [of denial of the claim] to
submit a request for an appeal . . . .

**<u>Our Response to An Appeal</u>**

Once we receive a request for an appeal, we will respond within 45 fays,
unless additional information is requested.  If additional information is

because Defendants never provided him with a decision on his appeal it must be deemed allowed and admitted and not denied. *See* Complaint, ¶ 41. Defendants' position is that Plaintiff's October 20, 2005 correspondence did not and could not constitute an "appeal" because there was never any consideration of Plaintiff's claim by United of Omaha -- which, as indicated, under the Plan Documents, has the exclusive and final authority to make claim determinations -- since it never received Plaintiff's claim. *See* Defendants' Answer to Complaint, ¶¶ 32-34. United of Omaha states that it did not receive Plaintiff's claim until January 10, 2006 when it was served with a copy of Plaintiff's Complaint in this action, which had a copy of the claim appended to it as an exhibit.

After receiving this Court's Notice of a Scheduling Conference, Plaintiff filed the instant Motion for Partial Summary Judgment asking the Court for a declaratory judgment declaring that by failing to timely respond to his Claim or provide him with the reasons for its purported denial of the Claim within the time limits provided in the Plan Documents, United of Omaha has waived its right to assert any basis for any denial of the Claim, and therefore, United is obligated to pay Plaintiff's Claim under the life insurance

---

requested, the following extensions will apply:

(a) extension period: 45 days; and

(b) maximum number of extensions: one

We will have a total of 90 days to process the appeal.

[*See* Plaintiff's Ex. 2, p. 18-19; Ex. 4, p. 28-29.]

7

policies.  Defendants, meanwhile, cross-moved to dismiss Plaintiff's Complaint, without

prejudice, or in the alternative to stay proceedings pending Plaintiff's exhaustion of

administrative remedies.

### III.  DISCUSSION

### A.  WAIVER

In support of his contention that United of Omaha waived its right to assert any

basis for denying his Claim, Plaintiff cites no ERISA cases or other federal authority.

Rather, he relies upon one 1926 Michigan case holding that an insurer waives any right to

assert any reason for denying of a claim other than those specifically stated in its denial.

*See* Plaintiff's Brief, p. 5, quoting *Smith v. Mutual Fire Ins. Co.*, 234 Mich. 110, 122-23

(1926):

> This court has many times held, and it must be
> accepted as the settled law of this State, that when a loss
> under an insurance policy has occurred and payment refused
> for reasons stated, good faith requires that the company shall
> fully apprise the insured of all of the defenses it intends to
> rely upon and its failure to do so is, in legal effect, a waiver,
> and estops it from maintaining any defenses to an action on
> the policy other than those of which it has thus given notice.

*Smith v. Mutual Life Ins. Co.*, 234 Mich. 110, 122-23 (1926).  *Accord
Bristol West Ins. Co. v. Whitt*, 406 F. Supp. 2d 771, 761 (W.D.Mich. 2005)
[sitting in diversity and applying Michigan law].

However, not all common law insurance principles apply to ERISA-regulated

insurance policies.

ERISA is a comprehensive statute designed to federalize the regulation of

8

employee welfare benefit plans.  The statute, however, has interstices, and the Supreme

Court has noted that Congress expected, in passing the statute, that "a federal common

law of rights and obligations under ERISA-regulated plans would develop."  *Pilot Life*

*Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557 (1987); accord *Firestone Tire*

*& Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 954 (1989); *University Hosp.*

*of Cleveland v. South Lorain Merchants Ass'n Health & Welfare Benefit Plan and Trust*,

441 F.3d 430, 437 (6th Cir. 2006).The developing federal common law of ERISA may

look to state law for guidance, but must adhere to the congressional policy concerns that

inform ERISA.  *See Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1347 (11th

Cir. 1994); *Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 647 (7th Cir. 1993).  "The

ultimate objective is not to fulfill policy objectives of state law but to fulfill the

congressional command embodied in the language and structure of the federal statute."

*Id.* (Citation omitted.)  Thus, not all common law insurance principles automatically

apply to ERISA-regulated policies.  *Glass, supra*.

The concept of waiver is derived from the common law of contracts.  *O'Connor v.*

*Provident Life and Accident Co.*, 455 F. Supp. 2d 670, 676 (E.D. Mich. 2006).  Waiver is

the voluntary, intentional relinquishment of a known right.  *See* Appleman, Insurance

Law and Practice, § 9521 *See also Moore v. First Security Casualty Co*., 224 Mich.App.

370, 376, 568 N.W.2d 841, 844 (1997) (quoting Black's Law Dictionary).

The federal common law of ERISA for waiver is not well-developed.  The Sixth

Circuit has not recognized waiver in the ERISA context. Two circuits -- the Fourth and

9

the Second -- have categorically refused to incorporate the principles of waiver into the common law of ERISA.  *See White v. Provident Life & Acc. Ins. Co.*, 114 F.3d 26, 29 (4th Cir. 1997) (the common law of ERISA "does not incorporate the principles of waiver and estoppel."); *Juliano v. Health Maintenance Organization of New Jersey, Inc*., 221 F.3d 279, 288 (2d Cir. 2000) ("where the issue is the existence or nonexistence of coverage (e.g., the insuring clause and exclusions), the doctrine of waiver is simply inapplicable.")  Only three circuits -- the Fifth, Seventh and Eleventh circuits -- have considered application of the waiver concept in ERISA actions and only one court has applied it.

A panel of the Fifth Circuit applied the concept of waiver to prevent an insurer from denying coverage under an ERISA policy in  *Pitts v. American Security Life Ins. Co.*, 931 F.2d 351 (5th Cir. 1991).  In that case, the plaintiff was insured under an American Security group health policy  purchased by his employer, United Plumbing Company, that required a minimum number of ten employees to enroll before coverage would be effective.  Under the terms of the policy, if the number of enrolled employees fell below this minimum, the insurer could terminate the policy.

Over the ensuing years, due to business difficulties, employees left United Plumbing, eventually leaving only the plaintiff insured under the group policy.  The defendant insurer, nonetheless, continued to accept premiums from the employer during which time the plaintiff was injured in an accident and incurred significant medical expenses which the defendant paid.  After it had paid more than $100,000 of the

10

plaintiff's medical expenses, the insurer suddenly declared that it was terminating the policy because the number of employees enrolled had fallen below ten. The defendant thereafter ceased paying the plaintiff's medical bills.

The district court applied the doctrine of equitable estoppel and determined that American Security was obligated to continue to provide plaintiff medical coverage. The Fifth Circuit held that estoppel was inapplicable but found an alternative basis for affirming the district court's judgment under the waiver doctrine.[9] The court determined that the insurer's actions demonstrated its voluntary relinquishment of its right to rely on the eligibility requirements to terminate the policy explaining:

> American Security accepted insurance premiums from United Plumbing for five months after learning beyond all doubt that Pitts was the only employee remaining on the policy. It later cashed these checks to recoup some of its losses on the policy. These actions constitute a classic example of waiver.
>
> * * *
>
> After American Security learned that the policy requirements had

---

[9] As the Fifth Circuit noted, although the terms "estoppel" and "waiver" are often used interchangeably, they are, in fact, different concepts:

> Strictly defined, waiver describes the act, or the consequences of the act, of one party only, while estoppel exists when the conduct of one party has induced the other party to take a position that would result in harm if the first party's act were repudiated. [Citation omitted.] In contrast to waiver, then, estoppel involves some element of reliance or prejudice on the part of the insured before an insurer is foreclosed from raising a ground for denial of liability that was known at an earlier date. See Restatement (Second) of Torts § 894(1) (1977).

931 F.2d at 357.

11

> been breached, it could have protected any possible right to deny liability
> by executing an ordinary reservation of rights. Instead, it accepted premium
> payments and paid medical benefits without reservation. It thus waived its
> right to assert a defense to its liability under the policy.

931 F.2d at 357.

By contrast, in *Glass v. United of Omaha Life Ins. Co.*, *supra*, the Eleventh Circuit

found the waiver doctrine inapplicable in an ERISA case where the plaintiff failed to

adduce evidence that the insurer knowingly and intentionally waived the eligibility

requirements of its plan. *Glass* involved a group life and health insurance program

offered and administered by Silk Greenhouse, the employer of Maxwell Hostetter prior to

his death. Under this program which was started by Silk in March of 1990, the standard

policy for employees provided "Basic" coverage -- life insurance equal to the employee's

annual salary, plus health, dental and accidental death and dismemberment insurance --

the premiums for which were paid jointly by the employee and Silk Greenhouse. The

program also offered to Basic plan enrollees, an additional "Elect" life insurance policy

for up to $100,000, with the premiums to be paid for solely by the employee. This

"Elect" policy contained a "portability" feature that allowed the policy to be converted

into an individual policy when the employee left Silk Greenhouse.

Mr. Hostetter enrolled in both the Basic and Elect life programs in March 1990

naming his mother as the beneficiary on both policies. Both policies went into effect on

April 1, 1990. After Hostetter's employment was terminated in June 1990, he elected to

convert the Elect life policy to an individual policy pursuant to the portability feature.

12

United of Omaha enrolled Hostetter in the insurance programs, initially accepting premiums, and converted his Elect life policy upon his request.  However, it turned out that Mr. Hostetter was ineligible for either Basic or Elect coverage:  the Basic life policy required that to be eligible for coverage, Silk employees had to be actively working at least 30 hours per week at the time the plan went into effect on April 1, 1990.  Hostetter was ineligible for the plan because he went on a leave of absence in January 1990, well before the plan went into effect, and never returned to work.

Silk Greenhouse was responsible for providing United of Omaha with a list of employees eligible for the group program.  Silk viewed employees on leaves of absence as full-time employees, and therefore, included them on the eligibility list provided to United.  Mr. Hostetter's name was included on this list.  United later discovered that employees who were on leave at the inception of the plan had been erroneously enrolled.  Upon discovering this mistake in November 1990, it began contesting the eligibility of these employees, and informed Silk that it considered Hostetter ineligible by January 1991.  Hostetter died of AIDS on February 2, 1991.

After Mr. Hostetter's death, United denied the claims made by his mother on both the life portion of his Basic coverage and the Elect life insurance policy.  Mrs. Hostetter subsequently brought an ERISA action claiming she was wrongfully denied benefits and further argued that waiver and/or estoppel prohibited United of Omaha from denying benefits.  The district court entered summary judgment in favor of the insurer and the Eleventh Circuit affirmed.

13

The appellate court first found there was no wrongful denial of eligibility under ERISA because it was clear that Hostetter was not working 30 hours per week at the time the plan became effective and thus, was not eligible for the plan.  The court further found that Mrs. Hostetter's equitable estoppel argument failed because she adduced no evidence of detrimental reliance on any misrepresentation regarding her son's eligibility.  The court also rejected the plaintiff's waiver argument explaining:

> We conclude that plaintiff has adduced insufficient evidence either of intentional relinquishment of a known right or of any unjust benefit circumstance. . . . [T]he summary judgment record in this case clearly shows that defendant did not know beyond doubt that plaintiff was inactive (i.e., not actively at work) at the crucial time -- when the plan and his coverage became effective.  Moreover, we conclude that plaintiff has failed to adduce evidence of any unjust benefit.  Once United became aware that some enrollees might never have been actively at work, it immediately raised the issue of their eligibility.  *See* Appleman Insurance Law & Practice § 9256 at 365 and n. 14 (1981) and cases cited therein (under common law, the insurer, after discovering misrepresentation of insured, is entitled to a reasonable time to make its investigation and determine what action should be taken).  Although United accepted some premiums during the investigation and resolution of the problem, there is no evidence that United attempted to unjustly enrich itself at the expense of an ineligible plan participant.[10]  Based on the circumstances in this case. . . , we decline to incorporate as part of the federal common law of ERISA a "something-for-nothing" waiver claim like Hostetter urges in this case.

33 F.3d at 1348.

The Seventh Circuit also rejected the application of a  "something-for-nothing" waiver in *Thomason v. Aetna Life Ins. Co.*, *supra*.  In that case, the plaintiff's late

---

[10]   United promptly attempted to return the few premium payments it had accepted upon determining that Silk Greenhouse had erroneously included Hostetter on the eligibility list.  33 F.3d at 1348 n. 6.

14

husband was insured under a group life and disability insurance policy issued by

defendant Aetna to his employer, Burkhart Foam, Inc.  Under written terms of the policy,

an employee would be entitled to "extended insurance" (that is, to life insurance coverage

that would continue "without payment of further premiums") if, "before attaining the age

of sixty years. . . . [the employee] became totally and permanently disabled."  9 F.3d at

646.

Less than two months after his sixtieth birthday, on November 11, 1985, Mr.

Thomason suffered a stroke.   He thereby became entitled to, and subsequently received,

long-term disability benefits.  Because the stroke occurred after he turned sixty, however,

Mr. Thomason did not qualify under the written terms of the plan for extended life

insurance free of premium payments.  *Id.*  He did have the option of continuing his life

insurance coverage by converting the group life insurance policy to an individual policy,

but he did not do so.

Approximately three years after his stroke, on September 27, 1988, Aetna sent Mr.

Thomason a letter that opened with the words, "Your Group Life Insurance Policy has

been extended during your total disability without cost to you."  *Id.*  Another such letter

was sent to Thomason a year later, on September 9, 1989.  Each letter instructed the

recipient to sign the bottom of the letter and return it to Aetna as an indication that the

recipient continued to be "disabled" according to the terms of the policy.  Thomason

signed and returned both letters.  *Id.*

Mr. Thomason died on January 9, 1990.  Mrs. Thomason, a named beneficiary,

15

then filed a claim for $46,000 in life insurance benefits.  Aetna denied her claim and she

brought suit claiming that by sending Mr. Thomason letters apparently referring to

continuing life insurance coverage, Aetna waived its right to rely on the express terms of

its "extended coverage" provision.  The Seventh Circuit found no merit in the plaintiff's

argument.  The court stated:

> To find a valid expressed waiver, some courts require that the waiving party
> has received consideration for the waiver or that the non-waiving party has
> acted in reasonable reliance on the apparent waiver.  See, *e.g.,* 28 Am. Jur.
> 2d *Estoppel and Waiver* § 30 ("[i]t is generally held that a waiver must be
> accompanied by a consideration where the elements of estoppel are not
> shown") § 159 (1966), and cases cited therein. . . .  Other courts hold,
> especially in the insurance context, that an implied waiver can be found
> without any detrimental reliance or exchange of consideration.  See, *e.g.*, 46
> CJS *Insurance* §§ 785-786 (1993) ("[C]onsideration is unnecessary to
> establish a waiver or estoppel on the part of the [insurance] company
> precluding it from avoiding or forfeiting the contract of insurance. * * * [A
> waiver] may arise without the insurance company doing anything to
> mislead the insured to his disadvantage, prejudice, or injury.")

> In this case, plaintiff concedes that she cannot establish any sort of
> detrimental reliance on the misleading letters that Aetna sent.  Nor did she
> give Aetna consideration for the alleged waiver.  The waiver that plaintiff
> seeks, then, is a something-for-nothing kind of waiver whereby Aetna will
> be held to the terms of its misleading representations for no reason other
> than that it made them.  The Court will not apply such waiver principles to
> ERISA actions.

> The policies. . . for applying estoppel principles to certain ERISA
> actions [are] two-fold:  In cases such as these where there is no danger that
> others associated with the Plan can be hurt there is no good reason to breach
> the general rule that misrepresentations can give rise to an estoppel.  There
> is no reason for the employee who reasonably relied to his detriment on his
> employer's false representations to suffer.  There is no reason for the
> employer who misled its employee to be allowed to profit from the
> misrepresentation. . . .  The concern was both for the detriment to the
> relying party and for unjust enrichment on the part of the party to be

16

estopped.  The waiver principles that plaintiff argues ought to be applied to her ERISA claims are based neither on detriment to her nor on benefit to Aetna.  To the extent that the common law will sometimes hold parties to the terms of a misleading representation for no reason other than the circumstance that such a misleading representation was made, such is not the common law of ERISA in this Circuit.

9 F.3d at 649-50 (citations some internal punctuation omitted).

The rulings in *Pitts*, *Glass*, and *Thomason* were recently synthesized in *O'Connor v. Provident Life and Accident Company*, 455 F. Supp. 2d 670 (E.D. Mich. 2006) (Lawson, J.), and in so doing, the court found the concept of waiver inapplicable.  In *O'Connor*, the plaintiff's decedent had elected a death benefit under his employer's group policy that was in excess of the multiple offered by the insurance underwriter, Provident, although the premiums for the amount elected were deducted from his paycheck.[11] Provident paid a death benefit in the maximum amount offered to the employees, but the plaintiff sought an award of the difference between the amount paid and the amount the decedent had elected, contending that Provident waived its approval requirements or was equitably estopped from denying coverage.  The court found that neither estoppel nor waiver applied.

---

[11] O'Connor elected coverage in the amount of $250,000.  However, the plan documents and the enrollment form that he filled out contained a limitation that provided that the "guaranteed issue" amount of coverage would be "the lesser of five times base annual earnings or $200,000."  The plan also required that O'Connor provide proof of insurability for the additional insurance and the claim form further alerted that "[b]enefit amounts chosen in excess of the guaranteed issue limit will not go into effect until underwritten approval by Unum/Provident.  Deductions will not begin for the *excess* amount until approval is received." 455 F. Supp. 2d at 671, 673.

In rejecting the plaintiff's waiver argument, the court stated:

> In considering waiver, [*Pitts, Glass and Thomason*] uniformly apply the requirement that the party seeking to benefit from the waiver argument prove that the other party was aware of facts and chose not to assert the ineligibility at the time premiums were accepted.  In this case, there is no dispute that the group policy plainly states that the maximum guaranteed death benefit may not exceed five times the employee's earnings, additional insurance was offered only if evidence of insurability was furnished, and Mr. O'Connor never furnished such evidence to the defendant.  The parties also agree that the enrollment form states that premiums would not be deducted from the employee's paycheck unless the coverage was approved.  However, the evidence in the administrative record does not support the notion that the defendant was aware that Mr. O'Connor had applied for coverage that required proof of insurability, and waived that requirement.  <u>Certainly, someone made an error: either the employer made a mistake in deducting the premium payments without receiving approval, or the defendant received the premiums and simply forgot to insist on evidence of insurability.  But there is no evidence that the defendant was aware of the amount of the plaintiff's annual earnings and therefore could not know that the amount of coverage he elected exceeded five times those earnings.  A receipt of premiums without explanation from the employer in this case may have appeared to the defendant as part of normal receipts under the terms of the group life insurance policy. . . .   There is no evidence that defendant was attempting to reap an unjust benefit by extracting premiums from the decedent when it knew it had a defense to coverage and waited until a claim was made before cancelling the excess coverage amount.</u>

455 F. Supp. 2d at 678.[12]

Applying the foregoing authorities to the facts presented in this case, the Court finds insufficient basis for application of the doctrine of waiver.  First, to the extent that Plaintiff contends that Defendant United of Omaha must be deemed to have waived its

---

[12]  The court also found insufficient evidence to support the plaintiff's estoppel argument because there was no evidence in the record of any intent on the part of Provident to mislead or of justifiable reliance on the part of the plaintiff.  455 F. Supp. 2d at 679-80.

right to assert <u>any</u> defense when it did not respond to his claim within the time limits

provided in the Plan documents, to accept Plaintiff's argument would most assuredly be

acceptance of a "something-for-nothing" waiver since United never received Plaintiff's

Claim until it was served on January 10, 2006 with a copy of the Complaint which had a

copy of the Claim appended to it.  The Plan Documents clearly state that United of

Omaha has the <u>exclusive</u> authority to determine claim eligibility, therefore, until it is in

actual receipt of a claim it cannot make such a determination.  To hold, as Plaintiff

suggests, that Key Automotive Group's receipt of the erroneously filled-in Claim form in

September 2005 also constitutes United of Omaha's "constructive receipt" such that a

failure of United to respond to the Claim within 45 days thereof mandates that the Claim

be allowed would be inconsistent with the intent of Congress that ERISA plans provide

intraplan review procedures and that claimants exhaust those procedures before seeking

review in a court of law.  Furthermore, as the Second Circuit found in declining to apply

waiver under similar circumstances in *Juliano v. Health Maintenance Organization of*

*New Jersey, supra*, "where the issue is the existence or nonexistence of coverage (e.g., the

insuring clause and exclusions), the doctrine of waiver is simply inapplicable." 221 F.3d

at 288 [Citation omitted].[13]

---

[13]  This is consistent with the well-established rule that "resort to federal common
law generally is inappropriate when its application would ... threaten to override the
explicit terms of an established ERISA benefit plan." *Singer v. Black & Decker Corp.*,
964 F.2d 1449, 1452 (4th Cir.1992); *accord Hozier v. Midwest Fasteners, Inc*., 908 F.2d
1155, 1165 n. 10 (3d Cir.1990); *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290, 1296-97
(5th Cir.1989); *Musto v. American Gen. Corp.*, 861 F.2d 897, 910 (6th Cir.1988); *Straub*

Nor do any of the other circumstances surrounding Plaintiff's claim support a finding of waiver.  From the authorities discussed above, it is clear that for the doctrine of waiver to apply,  it must be established that the waiving party *intentionally* relinquished a known right and unjustly benefitted therefrom.  Here, the evidence presented does not establish that United intentionally relinquished its right to dispute Paul Badalament's eligibility for life insurance coverage at the time premiums were accepted.  Indeed, the scant evidence presented shows at best that even Key, the decedent's employer which was responsible for deducting premiums from employee paychecks, did not realize that premiums had been mistakenly deducted from decedent's continued salary checks until September 2005 and immediately thereafter cut a check to refund the mistakenly deducted premiums.  There is no evidence suggesting that United had any reason to know that decedent's premiums -- which likely were aggregated with other insurance premiums when paid by Key to the insurance company -- were not supposed to be paid.  As Judge Lawson observed in *O'Connor, supra*, "[a] receipt of premiums without explanation from the employer. . . may have appeared to the defendant as part of normal receipts under the terms of the group life insurance policy."  455 F. Supp. 2d at 678.  This case, therefore, presents facts wholly dissimilar from *Pitts* -- the <u>only</u> ERISA case to apply the waiver doctrine -- where the insurer, even after it discovered that it had been accepting premiums from someone who had become ineligible for the insurance through no fault of his own,

---

*v. Western Union Tel. Co*., 851 F.2d 1262, 1265-66 (10th Cir.1988).

continued for five months to accept and cash the checks for premiums, in a deliberate attempt to recoup some of the expenses it had had to pay on account of the plaintiff's medical bills.

For all of the foregoing reasons, the Court finds the doctrine of waiver inapplicable.  The Court is particularly wary of the application of the doctrine under the circumstances presented here, because, "a court may not find waiver if doing so would expand the scope of coverage permitted under the plan." *Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 317 (S.D.N.Y. 2003).  Thus, a required element of coverage -- such as a requirement that the insured be "actively employed"-- cannot be waived.  *Id.* Therefore, Plaintiff's motion for partial summary judgment/declaratory judgment will be denied.

B.    REMAND TO THE PLAN ADMINISTRATOR

In its cross-motion, Defendant United of Omaha asks that the Court either dismiss this case, without prejudice or, in the alternative, to stay proceedings, to allow Plaintiff to exhaust his intra-plan remedies.

As the Sixth Circuit has held, though ERISA does not explicitly require exhaustion of administrative remedies, "[t]he administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Costantino v. TRW, Inc*, 13 F.3d 969, 973 (6th Cir. 1994); *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir.1991); *see also Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 453 (6th Cir. 1991).  Not only does the legislative history of ERISA support this

21

proposition, *see Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir.1980), but also the relevant

ERISA provision reads: "[E]very employee benefit plan shall . . . afford a reasonable

opportunity to any participant whose claim for benefits has been denied for a full and fair

review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C.

§ 1133(2). *See Mason v. Continental Group, Inc.*, 763 F.2d 1219, 1226-27 (11th

Cir.1985), *cert. denied*, 474 U.S. 1087, 106 S.Ct. 863 (1986).

As the court explained in *Baxter v. C.A. Muer, supra*,

> Congress' apparent intent in mandating these internal claims procedures
> was to minimize the number of frivolous ERISA lawsuits; promote the
> consistent treatment of benefit claims; provide a nonadversarial dispute
> resolution process; and decrease the cost and time of claims settlement. It
> would be "anomalous" if the same reasons which led Congress to require
> plans to provide remedies for ERISA claimants did not lead courts to see
> that those remedies are regularly utilized.

941 F.2d at 453 (citations omitted).

Courts have recognized that where a procedural error occurred which prevented an

ERISA plaintiff from having the opportunity for a full and fair review before the plan

administrator, rather than conduct a *de novo* hearing on the merits, it is appropriate for a

district court to remand the case to the plan administrator to allow the plaintiff to exhaust

his administrative remedies. *See Gilliam v. Hartford Life and Acc. Ins. Co.*, 2006 WL

2873475 at * 10 (E.D. Ky. 2006), and cases cited therein. Remand is particularly

appropriate where the administrative record is void of pertinent evidence. "[W]here, as

here, the record is lacking and consequently prevents a proper determination on the

merits, remand is necessary to ensure the proper review of Plaintiff's claim. . . by the

administrator." *Id.*

In this case, the scant record evidence presented by the parties demonstrates that remand to the administrator is the only appropriate disposition of the matter. The Court can hardly make a determination on the merits as it has not even been provided with complete copies of the policies, nor has it been provided with copies of the decedent's severance documents. No determination as to the decedent's eligibility for coverage is possible on the present record.

Therefore, because of the procedural miscues that occurred in this matter, though unintentional, the Court finds that it is only appropriate that Plaintiff be given the opportunity for full consideration of his claim for benefits via the same channels that would have been available to him if his claim form had been promptly submitted to United. The Court makes no judgment with respect to the merits of Plaintiff's claim itself, as the decision rests with the Defendant United.

Accordingly, the Court will grant Defendant's motion to dismiss this case, without prejudice, and will remand the matter to the plan administrator for a determination of Plaintiff's claim for benefits.

<u>CONCLUSION</u>

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff's Motion for Partial Summary Judgment/Declaratory Judgment Against Defendant United of Omaha be, and hereby is, DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss this case, without

prejudice, is GRANTED and this case, accordingly, is REMANDED to the Plan

Administrator for determination of Plaintiff's claim for life insurance benefits.  Plaintiff may

move to re-open this case after he has fully exhausted his administrative remedies.

                               s/Gerald E. Rosen_____
                               Gerald E. Rosen
                               United States District Judge
Dated:  March 30, 2007



I hereby certify that a copy of the foregoing document was served upon counsel of record on
March 30, 2007, by electronic and/or ordinary mail.

                               s/LaShawn R. Saulsberry_____
                               Case Manager